Edgar W. Leonard v. Commissioner.
Leonard v. Commissioner
Docket No. 736.
United States Tax Court
1944 Tax Ct. Memo LEXIS 338; 3 T.C.M. (CCH) 215; T.C.M. (RIA) 44067; March 2, 1944
*338 William E. Davis, Esq., 923 Munsey Bldg., Washington, D.C., for the petitioner. B. W. Berg, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This is a proceeding for the redetermination of a deficiency in income tax for the calendar year 1939 of $1,346.94. The only question in issue is whether the amount of $5,000 paid by the petitioner to his father and deducted in his income tax return for 1939 is income from trust property which was not taxable to the petitioner. The facts have all been stipulated. Findings of Fact Edgar W. Leonard, the petitioner, is an individual residing within the City of New York, N. Y., with business offices at 14 Wall Street, New York, N. Y.
For the calendar year 1939 the petitioner filed his income tax return with the collector of internal revenue for the second collection district of New York. On July 16, 1928, Charles W. Leonard, father of the petitioner, and now deceased. organized the Beaumont Company, a personal holding corporation, under the laws of the State of Delaware, with a capitalization of 5,000 no par value shares. All of the assets of the corporation were furnished by Charles W. Leonard and all of the stock was held *339 and owned by him. On October 20, 1930, the Beaumont Company, by resolution of its board of directors, agreed to pay Charles W. Leonard a salary of $50,000 per year for life, provided he continued to act as president of the corporation during his lifetime, and duly notified him of its action. At the time of this transaction Charles W. Leonard was 82 years of age. On December 3, 1930, Charles W. Leonard gave all his stock in the Beaumont Company to the petitioner and to another son, Charles R. Leonard, in equal shares, each son thereby receiving 2,500 shares of the Beaumont Company stock. On April 3, 1934, Charles W. Leonard, in a letter to the Beaumont Company, voluntarily agreed to a reduction in salary to $18,000 per year ($1,500 per month) until further notice from him. On October 12, 1937, Charles W. Leonard, who was then 89 years of age, consented in writing with the Beaumont Company to a further reduction in salary to $10,000 per year, payable in equal monthly installments, provided: "* * * the corporation will guarantee that such salary shall be paid me for life and, in case of dissolution of the corporation that there will be set aside by the corporation a trust fund out *340 of which such salary is to be paid me for the duration of my life, or, in default of such trust fund that any one, two or all of the stockholders receiving a distribution in liquidation from the corporation will receive such distribution coupled with the burden of paying me the said annual salary for the rest of my life - said burden to be assumed by such stockholder or stockholders whether the distribution in liquidation be in kind or in cash, it being thoroughly understood that the amount or amounts received by the said stockholder or stockholders assuming the burden of my said salary upon liquidation of the said corporation is or are to be invested, and the said salary is to be paid from the income of such investment or investments. Should such investment or investments not produce enough to pay said salary any deficiency is to be made up from the corpus of said distribution or distributions." On October 12, 1937, petitioner and his brother, Charles R. Leonard, wrote the Beaumont Company separate letters in which each agreed to assume the payment of $5,000 of the $10,000 annual salary to Charles W. Leonard and further agreed that in case of liquidation to invest so much of any *341 distribution to each as in the judgment of each would yield income sufficient to pay the $5,000 annually and, in default of the income from such investments equaling $5,000, to make up any deficit in respect to the proportionate share assumed by the petitioner and Charles R. Leonard from the corpus of any distribution received by each of them in liquidation. The Beaumont Company was dissolved by appropriate corporate action on November 17, 1937, and its assets were distributed in kind equally to petitioner and his brother, Charles R. Leonard. The assets consisted principally of securities having a book value of $1,147,736.49, and a fair market value as of the date of dissolution of the corporation of $909,205.67. The petitioner received securities of a then market value of $454,702.83. Petitioner established a trading account which he designated as "No. 1 account" and placed therein, of the assets received by him in distribution, securities of the then market value of $181,841.12. Petitioner was free to trade in, sell, or exchange any or all of the securities placed in the No. 1 account and received by him in liquidation. In 1939 the earnings of petitioner's No. 1 account amounted *342 to $6,059.71. During 1939 the petitioner and his brother, Charles R. Leonard, each withdrew from their respective No. 1 accounts the sum of $5,666.65 and deposited the same in a joint account which they had opened with the Chase National Bank, making a total deposit of $11,333.30, the joint account having been opened for the purpose of and used exclusively for defraying the living expenses of Charles W. Leonard. The bills for living expenses of Charles W. Leonard were paid from this joint account by checks signed by either petitioner or Charles R. Leonard to pay such bills as they were presented. The joint account was used for no other purpose. Charles W. Leonard, father of the petitioner, died on November 2, 1941. For the year 1939 petitioner filed his income tax return and reported as income $6,059.71, hereinabove referred to, and sought a deduction, not for the $5,666.65 which he had transferred to the joint account for the benefit of his father, but for $5,000 only being the amount of his proper share of the burden for the salary of Charles W. Leonard which he and his brother had assumed upon the dissolution of the Beaumont Company. For the calendar year 1939 Charles W. Leonard *343 duly filed his income tax return and reported as taxable income to him, not the $10,000 received by him on account of salary but the entire amount of $11,333.30 which had been deposited for his benefit in the joint account. It is the petitioner's contention herein that the amount of $5,000 income received from the No. 1 account was not petitioner's money and therefore could not be chargeable to him as taxable income. He submits that he was the medium through which this income passed to Charles W. Leonard, who duly reported for income as taxable income to him and paid tax thereon; that the $5,000 should never have been reported as taxable income of the petitioner; that having been erroneously reported he should be permitted to deduct that amount for the purpose of arriving at his Federal tax liability. In support of this contention the petitioner cites , and, more particularly, . The first cited case stands for the proposition that where a taxpayer receives money under a claim of right he is taxable upon *344 the amount received; not otherwise. In the Turney case it was held that one-half of certain bonus money, received from a lessee under oil leases by the taxpayer, to whom the state had granted surface rights with reservation of minerals, and which he was absolutely bound by statute and the terms of leases to pay to the State of Texas when received by him, was not taxable income of the taxpayer. The facts in this case are not parallel to those which obtained in the Turney case. The petitioner herein contracted with his father that he would pay at least $5,000 a year for the remainder of his life upon his father's consenting to the dissolution of the Beaumont Company. Upon the dissolution of that company in 1937 petitioner received one-half of the assets of the company. He had previously been given one-half of the stock of that company by his father. Whether the petitioner had any income from the assets thus distributed to him or not during 1939 he was obligated to pay $5,000 to his father. No trust fund was set up by the corporation or by the petitioner for the payment of the $5,000. Clearly, we think, all of the income received by the petitioner from his property constituted *345 taxable income of the petitioner. The respondent contends that the $5,000 paid by the petitioner in 1939 was either living expenses paid for the support of his father or a gratuity. Whether it comes within either of those categories or is to be regarded as consideration for the receipt of one-half of the shares of capital stock of the Beaumont Company or as consideration for the consent of the father to a liquidation of that corporation there is no provision of the taxing statute which permits the deduction from the petitioner's gross income of the $5,000 here in question. Cf. ; affd. (C.C.A., 2nd Cir.), ; ; . Decision will be entered for the respondent.